UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

HECTOR LOUIS HERNANDEZ,

   Plaintiff,

      v.                                                       Civ. No. 3:19-cv-01033 (WIG)

ANDREW M. SAUL,
Commissioner of
Social Security,

    Defendant.

## RULING ON PENDING MOTIONS

This is an administrative appeal following the denial of the plaintiff, Hector Louis Hernandez's, application for Title XVI Supplemental Security Income Benefits. It is brought pursuant to 42 U.S.C. §405(g).[1] Plaintiff now moves for an order reversing the decision of the Commissioner of the Social Security Administration ("the Commissioner"), or in the alternative, an order remanding this case for a rehearing. [Doc. #20]. The Commissioner, in turn, has moved for an order affirming his decision. [Doc. #21]. After careful consideration of the arguments

---

[1]     Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. §§ 404.929; 416.1429. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. §§ 404.967; 416.1467. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

raised by both parties, and thorough review of the administrative record, the Court grants Plaintiff's motion to reverse and denies the Commissioner's motion to affirm.

## **LEGAL STANDARD**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant will meet this definition if his or her impairments are of such severity that the claimant cannot perform pervious work and also cannot, considering the claimant's age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner must follow a sequential evaluation process for assessing disability claims.  The five steps of this process are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the Listings). If so, and it meets the durational requirements, the Commissioner will consider the claimant disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines

whether there is other work in the national economy which the claimant can perform. *See* 20 C.F.R. §§ 404.1520; 416.920.[2] The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive…." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla or touch of proof here and there in the record." *Id.* If the Commissioner's decision is supported by substantial evidence, that decision will be sustained,

---

[2] DIB and SSI regulations cited herein are virtually identical. The parallel SSI regulations are found at 20 C.F.R. §416.901 et seq., corresponding to the last two digits of the DIB cites (e.g., 20 C.F.R. §404.1520 corresponds with 20 C.F.R. §416.920).

even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

## I. BACKGROUND

### A. Facts

Plaintiff filed his DIB and SSI applications on November 14, 2016, alleging an onset of disability of November 14, 2016.[3] His claim was denied at both the initial and reconsideration levels. Thereafter, Plaintiff requested a hearing. On May 7, 2018, a hearing was held before Administrative Law Judge Louis Bonsangue ("the ALJ"). Plaintiff, who was represented by counsel, and a vocational expert ("VE"), testified at the hearing. On July 3, 2018, the ALJ issued a decision denying Plaintiff's claims. Plaintiff timely requested review of the ALJ's decision by the Appeals Council. On April 26, 2019, the Appeals Council denied review, making the ALJ's decision the final determination of the Commissioner. This action followed.

Plaintiff was born on May 3, 1960, and was fifty-six years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset. (R. 79). He completed high school and has past relevant work as a machine operator. (R. 79). Plaintiff's complete medical history is set forth in the Statement of Facts filed by the parties. [Doc. ##20-1; 21-1]. The Court adopts these statements and incorporates them by reference herein.

### B. The ALJ's Decision

The ALJ followed the sequential evaluation process to determine whether Plaintiff was disabled under the Social Security Act.

---

[3] Hernandez amended his alleged onset date from May 30, 2009 (R. 382), to November 14, 2016, the date of the Title XVI SSI application and withdrew his Title II DIB claim during the hearing before the ALJ on May 17, 2018. (R. 70, 147). The amended onset date fell after Plaintiff's date last insured of December 14, 2014. (R. 73).

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 14, 2016, the amended alleged onset date. (R. 73). At Step Two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease and lumbago. (R. 73). At Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 75). Next, the ALJ determined Plaintiff retains the residual functional capacity[4] "to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except frequent climbing of stairs, no climbing of ropes, ladders and scaffolds, and frequent balancing, stooping, kneeling, crouching and crawling." (R. 75).

At Step Four, the ALJ found that Plaintiff was able to perform his past relevant work as a machine operator. (R. 79). The ALJ made alternative findings at Step Five. The ALJ found that because Plaintiff's ability to perform all or substantially all of the requirements of medium work was impeded by additional limitations, he relied on the testimony of a vocational expert to find that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform with his RFC. (R. 79-80). Accordingly, the ALJ determined that Plaintiff was not disabled from November 14, 2016, the alleged disability onset date, through July 3, 2018, the date of the ALJ's decision. (R. 80).

## II.    DISCUSSION

Plaintiff raises several arguments in support of his Motion to Reverse, which the Court will address in turn.

---

[4] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his or her limitations.  20 C.F.R. §§404.1545(a)(1); 416.945(a)(1).

a. **Development of the Record**

Plaintiff argues that the ALJ's ruling should be reversed or remanded for a number of reasons relating to a failure to develop the record and obtain medical source statements from *any* of his treating physicians including primary care physician Dr. Omprakash Pillai, or any other member of Mr. Hernandez's treatment team at Charter Oak Health Center. [Doc. #20-2 at 11-17]. For the reasons that follow, the Court finds that the ALJ did not fulfill his duty to develop the record and that remand is warranted to obtain medical source statements from treating physicians and clinicians and/or obtain a functional capacity evaluation.

"It is the rule in our circuit that the ALJ, unlike the judge in a trial, must [him]self affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1997) (internal quotation marks omitted); *see Moreau v. Berryhill*, No. 3:17-CV-396 (JCH), 2018 WL 1316197, at *4 (D. Conn. Mar. 14, 2018) ("An ALJ in a social security benefits hearing has an affirmative obligation to develop the record adequately." (internal quotation marks omitted) ). "Whether the ALJ has satisfied this obligation or not must be addressed as a threshold issue." *Moreau*, 2018 WL 1316197, at *4. "Even if the ALJ's decision might otherwise be supported by substantial evidence, the Court cannot reach this conclusion where the decision was based on an incomplete record." *Id.* (quoting *Downes v. Colvin*, No. 14-CV-7147 (JLC), 2015 WL 4481088, at *12 (S.D.N.Y. July 22, 2015)).

"The expert opinions of a treating physician are of particular importance to a disability determination." *Id.* at *5. "What is valuable about the perspective of the treating physician and what distinguishes this evidence from the examining physician and from the ALJ is [the treating physician's] opportunity to develop an informed opinion as to the physical status of the patient."

6

*Halle v. Astrue*, No. 3:11-CV-1181 (VLB), 2012 WL 4371241, at *6 (D. Conn. Sept. 24, 2012) (citing *Peed v. Sullivan*, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991) ). "In fact, where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or ... by a paralegal.'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir.1996).

This is not a case where plaintiff suffers relatively little physical impairment such that the ALJ may render a common sense judgment about plaintiff's functional capacity. The ALJ acknowledged as much by designating as "severe" plaintiff's degenerative disc disease and lumbago, and assessing an RFC with extensive and detailed limitations. (R. 73, 75-79).

Here, the ALJ assigned "partial weight" to the opinion of consultative examiner Dr. Judith Mascolo finding that her opinion was not "reliable," because her assessment was not based on her objective findings and "included a recitation of the claimant's subjective complaints rather than a function-by-function assessment of his abilities and limitations." (R. 78). Similarly, the ALJ assessed "little weight" to the physical RFC assessments of State agency physicians Dr. Jay Shaw and Dr. Robert Weisberg, who found that Mr. Hernandez's back impairment was non severe and failed to account for the objective medical evidence showing positive findings on examination.  (R. 78, *see* R. 185-95; 196-206; 209-20; 221-32). The ALJ's assessment of the opinions by the consultative physician and State Agency physicians is problematic because there is *no* medical opinion from a treating physician and/or clinician addressing the functional limitations that flow from Plaintiff's physical impairments to support the ALJ's physical RFC findings.

Here, Dr. Pillai's treatment records contain raw medical data and/or bare medical findings such as medication notes, diagnosis, examination findings, radiology reports, and Plaintiff's

7

reports of pain, but do not assess Plaintiff's functional abilities to do work related activities. "[W]hen the treatment notes and test results from the claimant's treating physicians do not assess how the claimant's symptoms limit [her] functional capacities, remand is warranted." *Angelico v. Colvin,* Civ. No. 3:15CV00831(SRU)(JGM), ECF No.17 at 33 (D. Conn. Feb. 8, 2017) (alterations, citations and quotation marks omitted).

Despite the lengthy and intensive nature of the treatment, the Administrative Record before this Court does not contain *any* medical source statement from Dr. Pillai, as well as other treating physicians and/or clinicians at Charter Oak Health Center, who provided treatment from 2014 through 2018. These doctors and clinicians developed a treating relationship with Plaintiff and had ample opportunity to observe and examine him. The absence of such evidence was noted by the ALJ. (R. 77). "Despite this recognition, however, there is no indication that ALJ [Bonsangue] attempted to 'fill [the] clear gap[ ] in the administrative record.'" *Blackert v. Berryhill*, No. 3:16-CV-1327 (JCH), 2017 WL 3168580, at *5 (D. Conn. July 26, 2017) (quoting *Rosa,* 168 F.3d at 79); *see Ayer v. Astrue*, No. 2:11-CV-83, 2012 WL 381784, at *3 (D. Vt. Feb. 6, 2012) (remanding to the ALJ "given the ALJ's failure to request medical opinions from any of Ayer's treating providers ... which resulted in a substantial gap in the record"). The Court finds that this case should be remanded for further development of the record from plaintiff's treating physicians and/or clinicians to obtain medical source opinions.

> The proceedings before an ALJ are not supposed to be adversarial. Where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history "even when the claimant is represented by counsel or ... by a paralegal." *Perez v. Chater,* 77 F.3d 41, 47 (2d Cir.1996); *see also Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir. 1996) ("It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must herself affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.' This duty ... exists even when ... the claimant is represented by counsel." (quoting *Echevarria v. Secretary of Health & Human Servs.,* 685 F.2d 751, 755 (2d Cir. 1982))).

*Richardson v. Barnhart*, 443 F. Supp. 2d 411, 423 (W.D.N.Y. 2006).

> [A]lthough the RFC determination is an issue reserved for the commissioner, see 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c), 416.927(d)(2), 416.946(c), "'an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dailey v. Astrue,* No. 09–CV–0099, 2010 WL 4703599, at *11 (W.D.N.Y. Oct. 26, 2010) (quoting *Deskin v. Comm'r of Soc. Sec.,* 605 F.Supp.2d 908, 912 (N.D. Ohio 2008)). Because there is no medical source opinion supporting the ALJ's finding that House can perform sedentary work, the court concludes that the ALJ's RFC determination is without substantial support in the record and remand for further administrative proceedings is appropriate. *See* 20 C.F.R. §§ 404.1520b(c), 416.920b(c); *see also Suide v. Astrue*, 371 F. App'x 684, 689-90 (7th Cir. 2010) (holding that "the evidentiary deficit left by the ALJ's rejection" of a physician's reports, but not the weight afforded to the reports, required remand).

*House v. Astrue*, No. 5:11-CV-915 GLS, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013);

*Jermyn v. Colvin*, No. 13-CV-5093 MKB, 2015 WL 1298997, at *19 (E.D.N.Y. Mar. 23, 2015) ("In fact, the ALJ's RFC determination is wholly unsupported by any medical evidence as the record is devoid of any opinions from treating or examining medical sources regarding Plaintiff's functional or work capacity limitations, such as Plaintiff's lifting, carrying, sitting or standing limits. Under these circumstances, the ALJ was obligated to develop the record and obtain RFC assessments from Plaintiff's treating and/or examining physicians.").

Accordingly, the Court finds that additional administrative proceedings are required. On remand, the ALJ should develop the record as necessary to obtain opinions as to Plaintiff's functional limitations from treating and/or examining sources, obtain a consultative physical examination and/or a medical expert review, and/or obtain a functional capacity evaluation and thoroughly explain his findings in accordance with the regulations. *See Martin v. Berryhill*, No. 16-CV-6184-FPG, 2017 WL 1313837, at *4 (W.D.N.Y. Apr. 10, 2017) ("There were many avenues available to the ALJ to fill the gap in the record ....") (citing *Covey v. Colvin*, 204 F.

Supp. 3d 497, 507 (W.D.N.Y. 2016)). The Commissioner on remand, "should employ whichever of these methods are appropriate to fully develop the record as to [Hernandez's] RFC." *Id*.

The Court's role in reviewing a disability determination is not to make its own assessment of the plaintiff's functional capabilities; it is to review the ALJ's decision for reversible error. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this ruling. On remand, the Commissioner will address the other claims of error not discussed herein. *See Moreau v. Berryhill*, Civil Action No. 3:17-CV-00396 (JCH), 2018 WL 1316197, at *4 (D. Conn. Mar. 14, 2018)("Because the court finds that the ALJ failed to develop the record, it also suggests that the ALJ revisit the other issues on remand, without finding it necessary to reach whether such arguments would themselves constitute legal error justifying remand on their own."); *Snedeker v. Colvin,* Civil Action No. 3:13-cv-970 (GLS/ESH), 2015 WL 1126598, at *8 (N.D.N.Y. Mar. 12, 2015)(finding it is pointless to address Snedeker's remaining points of error until his low back impairment is factored into a residual functional capacity finding. "The outcome of this case in its present posture will not change whether or not these additional points are meritorious or baseless. Addressing them administratively on remand, however, may avoid a second costly action for judicial review.").

### III.   CONCLUSION

For the reasons stated, Plaintiff's Motion to Reverse the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing **[Doc. #20]** is **GRANTED**. Defendant's Motion for an Order Affirming the Commissioner's Decision **[Doc. #21]** is **DENIED**.

In light of the Court's findings above, it need not reach the merits of plaintiff's other arguments. Therefore, this matter is remanded to the Commissioner for further administrative

proceedings consistent with this opinion. On remand, the Commissioner shall address the other claims of error not discussed herein.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. §636(c)(3); Fed. R. Civ. P. 73(c). The Clerk is directed to enter judgment in favor of the Plaintiff and close this case.

SO ORDERED, this 18th day of June 2020, at Bridgeport, Connecticut.

                                       */s/ William I. Garfinkel*
                                       WILLIAM I. GARFINKEL
                                       United States Magistrate Judge